IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CURTIS TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| MAKITA CORPORATION; | § | No. 3:23-cv-1533-K |
| MAKITA, U.S.A., INC.; MAKITA | § | |
| CORPORATION OF AMERICA and | § | |
| FORNEY INDUSTRIES, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER ON
PENDING EXPERT MOTIONS**

The motions below have been referred by United States District Judge Ed Kinkeade to the undersigned United States magistrate judge for determination. *See* Dkt. No. 122.

Plaintiff Curtis Taylor and Defendants Makita Corporation and Makita U.S.A., Inc. (collectively, "Makita") have filed the following motions to exclude expert testimony:

- Plaintiff's Rule 37 Motion to Strike New Opinion by Defense Expert Lisa P. Gwin, D.O., B.S.E.E. [Dkt. No. 111];
- Defendants' Opposed Motion to Strike Plaintiff's Retained Expert Daniel McDonough [Dkt. No. 112];
- Defendants' Opposed Motion to Strike Plaintiff's Expert Joellen Gill [Dkt. No. 115]; and
- Plaintiff's Fed. R. Evid. 702 Motion to Limit or Exclude Testimony of Jack E. Hyde, Jr. [Dkt. No. 121].

For the reasons and to the extent explained below, the Court GRANTS:

- Defendants' Opposed Motion to Strike Plaintiff's Expert Joellen Gill [Dkt. No. 115].

For the reasons and to the extent explained below, the Court DENIES:

- Plaintiff's Rule 37 Motion to Strike New Opinion by Defense Expert Lisa P. Gwin, D.O., B.S.E.E. [Dkt. No. 111] and
- Defendants' Opposed Motion to Strike Plaintiff's Retained Expert Daniel McDonough [Dkt. No. 112].

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part:

- Plaintiff's Fed. R. Evid. 702 Motion to Limit or Exclude Testimony of Jack E. Hyde, Jr. [Dkt. No. 121].

*See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

### Legal Standards

### I. Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*VeroBlue Farms USA Inc. v. Wulf, No.* 3:19-CV-764-X, 2023 WL 348963, at \*6 (N.D. Tex. Jan. 20, 2023) (quoting *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at \*1 (N.D. Tex. Mar. 1, 2022) (cleaned up)).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness

testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe v. United States*, 516 F. Supp. 3d 660, 679-80 (W.D. Tex. Feb. 2, 2021) (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab.*

*Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the *ipse dixit* [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions,"

but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 806-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and base his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's

methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned

up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that '[t]he *Daubert* reliability analysis applies to, among other things, "the facts underlying the expert's opinion,"' and "an opinion based on 'insufficient, erroneous information, fails the reliability standard.'" *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's

testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[ ] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently

supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

And "[o]ther evidentiary rules, such as [Federal Rule of Evidence] 403, may still operate to exclude the evidence." *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995) (citing *Daubert*, 509 U.S. at 595). Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the

district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## II.    Federal Rules of Civil Procedure 26 and 37

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In addition to initial disclosures, a party must disclose to the other parties the identity of any witness that it may use at trial to present expert evidence. *See* FED. R. CIV. P. 26(a)(2)(A).

If the witness is one retained or specially employed to provide expert testimony in the case, the report must contain, among other things, "a complete statement of all opinions the witness will express and basis and reasons for them" and "the facts or data considered by the witness in forming them." *See* FED. R. CIV. P. 26(a)(2)(B).

If an expert is not required to provide a report, the disclosure must still provide "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). "A 'summary of opinions' under Rule 26(a)(2)(C) means 'a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case.'" *Tidwell v. Gomez*, No. 5:19-cv-179-H, 2022 WL 20686845, at *2 (N.D. Tex. Aug. 12, 2022) (cleaned up). And "it does not suffice to reference large bodies of material sources of facts without stating a brief account of the main points from those large bodies on which the expert relies." *Id.*

As to allegedly untimely supplemental expert reports, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." *VeroBlue Farms USA Inc.*, 2023 WL 348963, at *10.

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction … depends on the facts of the case." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *2 (N.D. Tex. July 29, 2022) (cleaned up).

But "[c]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert

disclosures and disclosure 'departs from [or] expands upon [the] original report in [any] material respects." *Holcombe*, 516 F. Supp. at 670 (cleaned up). "The purpose of supplementary disclosures is just that – to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up). "Thus [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e)." *Id.* (cleaned up).

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [obligation]." *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2106) (cleaned up). The failure to disclose must have had a "reasonable basis both in law and fact." *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

"In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a

continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No. 3:18-cv-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *accord Coleman v. Chevron Phillips Chem. Co. LP*, No. CV H-23-350, 2024 WL 460248, at *9 (S.D. Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

### Analysis

### I.    Taylor's Motion to Strike Defense Expert Dr. Gwin's New Opinion

Taylor moves to exclude the second opinion of Makita's expert, Dr. Lisa P. Gwin, under Rule 37. *See* Dkt. No. 111.

The deadline to designate experts in this case was April 30, 2025. *See* Dkt. No. 97. The parties do not dispute that Makita's original designation of Dr. Gwin was timely. *See* Dkt. No. 111 at 2 (stating that Makita "timely designated Dr. Gwin and produced her initial report"). (The Court's citations to page numbers in the record correspond with document page numbers, which may differ from Bates numbers.)

But Taylor takes issue with the July 15, 2025 service of Dr. Gwin's second report, which he asserts is "untimely and outside the scope of [Dr. Gwin's] designation." *Id.* at 10; *see id.* at 2. And, so, Taylor contends that Dr. Gwin's new report should be stricken. *See id.* at 1.

Taylor asserts that "Dr. Gwin was designated to opine about the mechanism of injury and cause of Mr. Taylor's injury. She was not designated to offer opinions regarding the presence or absence of a [traumatic brain injury]." *Id.* at 3. And, so, Taylor contends that Dr. Gwin's report is untimely because it is not supplemental. *See id.* at 4.

The Court agrees that Dr. Gwin's report contains new, rather than supplemental, opinions. Her original report, dated April 30, 2025, concludes:

- The fractured grinding wheel struck Mr. Taylor just below the angle of his chin in an upward and posterior orientation, lacerating the skin, then fracturing the mandible, then injuring the intraoral structures including his tongue and teeth.
- From an injury mechanism standpoint, the plane of the wheel could not have been as described by Mr. Taylor in his sworn deposition.

*Id.* at 3; Dkt. No. 111-2 at 11.

Her second report, dated July 10, 2025, repeats the two conclusions above and adds:

- There is no evidence to suggest that Mr. Taylor experience[d] a traumatic brain injury as a result of the subject incident.

Dkt. No. 111 at 3; Dkt. No. 111-4 at 2-3.

Although the second report states that Dr. Gwin's opinions "outlined in [her] April 2025 report have not changed," the Court finds that Dr. Gwin's conclusion that Mr. Taylor did not have a traumatic brain injury is a new opinion and exceeds the scope of her expert designation. Dkt. No. 111 at 3; Dkt. No. 111-4 at 3.

And so, because Dr. Gwin's report is not supplemental and was served after the expert designation deadline, it is untimely under Rule 26(e)(1).

As explained above, a party who fails to make a timely disclosure must prove that the untimeliness was substantially justified or harmless. *See* FED. R. CIV. P. 37.

Taylor argues that the untimely disclosure of Dr. Gwin's report is not substantially justified. *See* Dkt. No. 111 at 8. He contends that the new conclusion was based on Dr. Cynthia M. Day's findings, which state that Taylor had no acute head injury and are "virtually identical" to those in the Swedish Medical Center Report. *Id.* at 6-8; *see* Dkt. No. 111-4 at 4. The Swedish Medical Center Report was available to Dr. Gwin when she made her first report. *See* Dkt. No. 111 at 7-8.

Makita responds that "Dr. Gwin's supplemental report is substantially justified." Dkt. No. 132 at 3. They contend that they did not receive Taylor's radiology films until May 27, 2025, after the expert designation deadline. *See id.* at 2.

The Swedish Medical Center Report that Dr. Gwin reviewed for her first opinion states that Taylor had "no other acute intracranial abnormality." Dkt. 111-6 at 2. But it did not contain images.

Dr. Gwin's second report states that, in preparing the report, she reviewed Taylor's "[a]cute [i]maging [s]tudies," which she "received after [her] report dated April 30, 2025." Dkt. 111-4 at 1. It notes that "[h]is head CT demonstrated no acute findings." *Id.*

And so, the Court agrees with Makita that the untimely disclosure of Dr. Gwin's second report was substantially justified because it was based on radiology images unavailable to Dr. Gwin until after the expert designation deadline.

The Court declines to exclude Dr. Gwin's second report.

-16-

## II.    Makita's Motion to Strike Plaintiff's Expert Dr. McDonough

Makita moves to strike Taylor's expert Daniel McDonough. *See* Dkt. No. 112. They challenge his qualifications and the relevance and reliability of his opinion. The Court addresses each contention in turn.

A. Qualifications

Makita argues that Mr. McDonough is not qualified because "he has never used, tested, or analyzed the Makita GA7911 or any substantially similar tool prior to this litigation." Dkt. No. 141 at 2. Makita also states that Mr. McDonough "has never personally used a sander or grinder to excite a generator, has never examined the use of a power tool to excite a generator, and has no specifics on that topic or any other cases of operating tools off a generator." Dkt. No. 113 at 6.

But the Court agrees with Taylor that expertise should not be "defined so narrowly that qualified experts are irrationally excluded from testifying." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018).

Mr. McDonough has "extensive personal and professional experience in the use, operation, and analysis of handheld tools, including sanders and grinders similar to the product involved in this case." Dkt. No. 125 at 27. And he is a licensed professional engineer with Bachelor and Master of Science degrees in mechanical engineering. *See id.* There are "sufficient indicia" that Mr. McDonough can "provide a reliable opinion" on the tool at issue here. *Williams*, 898 F.3d at 625 (quoting *Huss v. Gayden*, 571 F.3d 442, 455-56 (5th Cir. 2009)).

And, so, the Court finds that Mr. McDonough is qualified to provide an expert

report in this case.

    B. <u>Relevance and Reliability</u>

Makita contends that Mr. McDonough's opinions are unreliable under the *Daubert* factors. *See* Dkt. No. 113 at 13-14. And it argues that his opinions are "unhelpful to the jury." Dkt. No. 141 at 5.

On reviewing Mr. McDonough's report [Dkt. No. 125 at 4-25], the Court disagrees.

Mr. McDonough's report contains an "investigation, analysis, and evaluation of [the] Makita brand handheld sander-grinder" used by Taylor on August 14, 2021. Dkt. No. 125 at 5. Mr. McDonough was asked to "evaluate the design and performance of the Makita tool involved in this incident." *Id.* In doing so, he also inspected and analyzed an exemplar tool. *See id.*

In his report, Mr. McDonough articulates the factual basis for his opinion on the relevant issues by listing all the materials he considered, including the Makita tools. *See id.* at 5-6. He explains the procedures and standards that he used to analyze those materials. *See id.* at 12-14, 20-24. And, when forming his opinions, he applied his education and experience to the facts derived from the materials he reviewed. *See id.* at 18-24.

Mr. McDonough also lays out that his opinions "are given to a reasonable degree of scientific and engineering certainty, using methodologies which are generally accepted by the scientific and engineering communities." *Id.* at 5.

Makita argues that Mr. McDonough's method of testing does not "have general

acceptance of other experts in the field." Dkt. No. 113 at 14. And they contend that Mr. McDonough has not provided a "clear methodology" or error rate for his testing. *Id.*

Mr. McDonough used a Failure Modes and Effects Analysis, which is "an industry standard technique and accepted methodology that product designers use to identify and address product failure modes." Dkt. No. 125 at 12. And he compared the Makita GA7911 to the UL60745 – "a class of standards that address hand-held motor-operated electric tools" and "conforms with other global standards." *Id.* at 18. The UL60745-2-3 standard "includes the particular requirements for grinders, polishers, and disk-type sanders." *Id.* Mr. McDonough also tested the exemplar tool in accordance with UL60745 testing standards. *Id.*

Makita also contends that Mr. McDonough's report is based on "incorrect assumptions" that are "not grounded in fact." *See* Dkt. No. 112 at 1; Dkt. No. 141 at 4.

But, as explained above, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion because the facts underlying the opinion are incorrect. *See ENGlobal*, 2018 WL 1877015, at *8.

Makita argues that Mr. McDonough engaged in "cherry-picking" by "listen[ing] to his client's version of events and ignor[ing] anything having to do with the wheel itself" – that is, that he did not "examine the failed wheel." Dkt. No. 113 at 14; Dkt. No. 141 at 4. And they note that Mr. McDonough's "testing does not simulate the actual conditions of the accident." Dkt. No. 141 at 4.

In response, Taylor points out that Mr. McDonough was retained to determine the efficacy of a wheel guard – not to determine what caused the wheel to fragment in this case. *See* Dkt. No. 124 at 17.

And, in preparing his report, Mr. McDonough reviewed pleadings, discovery materials, depositions, inspections, and literature. *See* Dkt. No. 125 at 5-6. He also examined an exemplar Makita GA7911 that was fitted with the same type of wheel as the subject wheel. *See* Dkt. No. 124 at 18; Dkt. No. 125 at 20.

The Court agrees with Taylor that, insofar as Mr. McDonough focused on certain facts more than others or did not replicate the accident, Makita may cross-examine him about these issues at trial. *See* Dkt. No. 124 at 19.

And, so, the Court finds that Mr. McDonough's opinions are reliable under *Daubert* and Rule 702. And the Court declines to exclude Mr. McDonough's opinions.

## III.    Makita's Motion to Strike Plaintiff's Expert Ms. Gill

Makita moves to strike the testimony of Taylor's expert Joellen Gill because it is not relevant or reliable under *Daubert* and Rule 702. *See* Dkt. No. 115.

The Court agrees.

The bulk of Ms. Gill's report discusses general principles of human factors and engineering safety. Dkt. No. 129 at 50-56. Ms. Gill then opines that a human factors principle – "cost of compliance" – explains why Taylor did not purchase a guard to use with the Makita tool. *Id.* at 55.

Makita points out that Ms. Gill "did no testing of the tool, and she did not review, analyze, or compare the warnings on other similar tools." Dkt. No. 115 at 2. And Makita contends that her opinions lack peer review, general acceptance, or an

error rate. *See id.* at 3; Dkt. No. 116 at 18-19.

In support of his proffered expert, Taylor contends that "Ms. Gill's opinions are based on established principles in her field," such as the engineering safety hierarchy, the engineering design process, warning effectiveness research, and the cost-of-compliance principle. Dkt. No. 128 at 13-14.

But Ms. Gill does not reliably apply these general principles to Taylor's case.

As Makita points out, Ms. Gill's opinion is "not supported by testing." Dkt. No. 115 at 3. In her report, Ms. Gill recites the background of the case and describes Taylor's use of the Makita tool. Dkt. No. 129 at 49-50. She notes that Taylor did not read the instruction manual. *Id.* at 50. And she points out that "Taylor testified that had there been a guard in the box, he would have used it." *Id.* at 55.

Ms. Gill does not explain how she concluded that Taylor did not buy a guard because of a high cost of compliance. She points to no testimony from Taylor explaining why he did not buy a guard. And she does not discuss the obstacles Taylor would have faced in obtaining one.

Ms. Gill opines that "it is foreseeable that [a user of a grinder] would not go to the trouble of driving to the store to purchase a guard." *Id.* at 55. But in reaching that conclusion, she cites (1) general human factor principles and (2) a 1987 study involving participants who ignored warnings and walked through a broken, but closer, door because of the high cost of compliance with the warning. *See id.* at 55-56.

Other courts have found that Ms. Gill's reliance on such materials cannot be enough to support admitting her expert opinion. *See, e.g.*, *Wells v. Kawasaki Motors*

*Corp., U.S.A.*, No. 2:16-cv-01086-DN, 2019 WL 5842921, at *4 (D. Utah Nov. 7, 2019) (excluding Ms. Gill's expert opinion because it was "based on generalized studies of warning labels and a limited subset of deponents – all without independent testing").

And, in her deposition, Ms. Gill stated that she was not familiar with any studies that differentiate unsophisticated users of mechanical tools from sophisticated users like Taylor. *See* Dkt. No. 125 at 13.

Under *Daubert* and Rule 702, Ms. Gill's testimony does not reliably apply the principles of human factors to the instant facts. And her testimony is not the product of reliable or replicable methodology.

And, so, the Court excludes Ms. Gill's expert report and testimony.

## IV.    Taylor's Motion to Strike Defense Expert Mr. Hyde

Taylor moves to limit or exclude the opinion and testimony of Makita's expert Jack E. Hyde, Jr. under *Daubert* and Rule 403. *See* Dkt. No. 121. He challenges Mr. Hyde's qualifications and the reliability of his testing and opinions. *See id.*

### A.   Qualifications

Taylor contends that Mr. Hyde is "unqualified to render any opinion regarding alleged evidence of wheel misuse or what caused the wheel to fail in this case" because "his background is predominantly focused on safety and fire protection." Dkt. No. 121 at 9.

Taylor relies on *Nationwide*, in which this Court disqualified a structural engineer from giving an expert opinion on a weld failure because he "had no educational or professional experience in metallurgy, welding engineering, or the welding process in general." *Id.* at 10 (citing *Nationwide Agribusiness Ins. Co. v.*

*Varco Bruden Bldgs., Inc.*, No. 5:19-cv-83-M-BQ, 2020 WL 1778069, at *1 (N.D. Tex. Mar. 3, 2020)).

In their response, Makita points out Mr. Hyde's "expertise in the safety and performance of power tools and their attachments." Dkt. No. 130 at 9. For instance, he is the chairman for the American National Standards Institute's ("ANSI") Committee O1, which establishes "safety standards related to woodworking machinery and tools," including sanders. *Id.*; *see* Dkt. No. 121-1 at 4. And he is a member of five Underwriter Laboratories (UL) committees, including "Panel 745 for tool safety standards" and "Panel 62841 for motor-operated tools and garden machinery safety standards." Dkt. No. 121-1 at 4; *see* Dkt. No. 130 at 9.

In his reply, Taylor argues that the ANSI committee "may be relevant to a GA7911 sander-grinder, but not a grinding wheel attachment." Dkt. No. 137 at 3. He argues that Mr. Hyde's UL panel experience likewise "may qualify him to testify about the subject sander-grinder, but not why the grinding wheel involved failed." *Id.* at 5.

The Court disagrees. Demanding the specificity that Taylor requests in evaluating an expert's qualification "would elevate labels over substance." *Williams*, 898 F.3d at 625.

The Court finds that Mr. Hyde is qualified to provide an expert opinion.

B. <u>Reliability</u>

Taylor challenges the reliability of two parts of Mr. Hyde's opinion: (1) the visual inspection of the subject tool, and any conclusions drawn from it, and (2) the

performance tests of the exemplar tool, and any conclusions derived from them.

For the reasons discussed below, the Court declines to strike Mr. Hyde's report and testimony based on his visual observations of the subject tool. But the Court excludes portions of his report and testimony derived from and pertaining to the performance testing.

### 1. *Visual Inspection of Subject Tool*

Taylor contends that Mr. Hyde's opinion based on his inspection of the subject tool is unreliable. *See* Dkt. No. 121 at 16. Taylor asserts that Mr. Hyde "did no testing to verify" his conclusions and that his opinion is "based solely on his visual inspection." *Id.* at 16, 22.

In creating his report, Mr. Hyde consulted UL safety standards, including those relevant to sanders and grinders. *See* Dkt. 121-1 at 44-56. His analysis was based in part on his experience with "the interpretation and application of safety principles and standards." *Id.* at 56. While analyzing the abrasions on the subject wheel, he also referenced an illustration from the tool's operator manual. *See id.*

And, so, Mr. Hyde's opinions derived from his visual inspection "are not so fundamentally unsupported that they would not assist the fact-finder in reaching an intelligent and sound verdict." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1049 (N.D. Tex. 2022).

### 2. *Performance Testing of Exemplar Tool*

Taylor argues that Mr. Hyde's performance testing is unreliable because he cannot point to similar prior testing. *See* Dkt. No. 121 at 18-19. Taylor adds that the

tests lack peer review and independent validation and cannot be replicated. *See id*.

Makita did not respond to the above contentions other than (1) to explain that the results of Mr. Hyde's testing are relevant because Mr. Hyde was not attempting to replicate the accident and (2) to argue that the performance testing is reliable because Mr. Hyde is qualified. *See* Dkt. No. 130 at 12-14.

But, as explained above, qualification, relevance, and reliability are distinct under Rule 702 and *Daubert*.

And, so, the Court addresses Taylor's contentions – that the performance testing is unreliable – without the benefit of Makita's response.

"Mr. Hyde conducted five (5) tests: one obstructed, two unobstructed, one start-up reaction torque[,] and one paint spray test." Dkt. No. 121 at 18. But, in his report, Mr. Hyde did not list any procedures or methodology on which he based his tests. *See* Dkt. No. 121-1. And he did not compare the results of the tests to any known safety or performance standards. *See id*.

Makita "fails to provide some objective, independent validation of [Mr. Hyde's] methodology." *Sneed v. Crown Equip. Corp.*, No. 3:23-cv-743-K, 2025 WL 449330, at *2 (N.D. Tex. Feb. 10, 2025).

And, so, the Court finds that his performance tests, and the conclusions derived from those tests, should be excluded.

## Conclusion

The Court rules on the parties' four expert motions as explained above.

SO ORDERED.

DATED: October 7, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE