IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CURTIS TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| MAKITA CORPORATION; | § | No. 3:23-cv-1533-K |
| MAKITA, U.S.A., INC.; MAKITA | § | |
| CORPORATION OF AMERICA and | § | |
| FORNEY INDUSTRIES, INC., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Makita Corporation and Defendant Makita U.S.A., Inc. (collectively, "Makita") have filed a Supplemental Motion for Summary Judgment. *See* Dkt. No. 118.

The motion has been referred by United States District Judge Ed Kinkeade to the undersigned United States magistrate judge for determination. *See* Dkt. No. 151.

For the reasons explained below, the Court should dismiss this case without prejudice for lack of subject-matter jurisdiction. But if, within the 14-day objection period, Taylor provides evidence as to the citizenship of himself, Makita Corporation, and Makita U.S.A., the Court should grant in part and deny in part Makita's motion for summary judgment [Dkt. No. 118].

**Procedural History and Factual Background**

On August 14, 2021, Plaintiff Curtis Taylor was repairing a damaged plow

shaft at his farm in Perryton, Texas. *See* Dkt. No. 126 at 8. Taylor was welding the plow shaft while it rested in the bed of his truck, and he was using the Makita GA7911 tool to grind the welds. *See id.*; Dkt. No. 119-4 at 7-8.

The GA7911 is labeled in its instruction manual and packaging as a "sander." Dkt. No. 145-7 at 2; Dkt. No. 119-1 at 2-4. The instructions acknowledge that it could also be used as a grinder. *See* Dkt. No. 145-7 at 5. The parties dispute whether the GA7911 is properly called a "sander" or a "sander-grinder." *See* Dkt. No. 126 at 8 n.2.

Taylor had separately acquired a grinding wheel manufactured by Defendant Forney Industries, Inc. and affixed it to the GA7911. *See* Dkt. No. 119 at 23. The GA7911 was not sold with a grinding wheel or wheel guard, and Taylor was not using a wheel guard at the time of the incident. *See* Dkt. No. 126 at 10.

In his deposition, Taylor testified that he placed the GA7911 on the bed of his truck with the grinding wheel facing up. *See* Dkt. No. 119-4 at 10-12; Dkt. No. 126 at 9. The grinder was plugged into the welder. *See* Dkt. No. 119-4 at 13. Taylor testified that the welder was also a generator, *see id.*, while Makita describes the generator as powering the welder, *see* Dkt. No. 119 at 9.

Taylor used the "trigger" or "start button" to power on the GA7911 while it was lying face up on the truck. Dkt. No. 126 at 9; Dkt. No. 119 at 9. While the GA7911 was running, the grinding wheel fragmented, and pieces of the wheel struck Taylor's face, causing injuries.

Taylor filed this lawsuit against Makita and Defendant Forney Industries, Inc., alleging product liability and negligence claims in relation to the injuries he

received while using the GA7911.

Taylor's claims against Defendant Makita Corporation of America were dismissed without prejudice. *See* Dkt. No. 104. And his claims against Forney were dismissed with prejudice. *See* Dkt. No. 150.

The parties have engaged in discovery and attempted mediation. *See, e.g.*, Dkt. Nos. 70 & 74.

The Court struck the testimony and report of Taylor's expert Joellen Gill. *See* Dkt. No. 147. It also struck the testimony and report of Makita's expert Jack E. Hyde, Jr., but only as to his performance tests and the conclusions derived from those tests. *See id.*

Makita filed their original Motion for Summary Judgment on November 18, 2024. *See* Dkt. No. 75. The motion was denied without prejudice under Federal Rule of Civil Procedure 56(d). *See* Dkt. No. 100. The Court stated that "[a]ll arguments made therein by the Makita Defendants may be re-urged at a later date after fulsome discovery has occurred." *See id.*

Makita then filed this Supplemental Motion for Summary Judgment. *See* Dkt. No. 118. Briefing on the motion is complete. *See* Dkt. Nos. 119-120, 126-127, 139, 145.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc.*

*v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact

undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it

could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

But, if "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense," for example, that movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986).

Accordingly, the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). That is, "[w]hen the party moving for summary judgment also bears the burden of proving the claim, he must establish that there is no genuine dispute of material fact as to every element of its claim, so that the evidence is so overwhelming that he is entitled to judgment in his favor." *Turner v. Criswell*, No. 4:19-cv-226-ALM-CAN, 2020 WL 1901086, at *3 (E.D. Tex. Jan. 6, 2020) (cleaned up), *rec, adopted*, 2020 WL 613963 (E.D. Tex. Feb. 10, 2020).

"If the moving party fails to meet this initial burden, the motion must be

denied, regardless of the nonmovant's response." *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex.) (cleaned up; quoting *Meecorp Cap. Markets LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 158 (5th Cir. 2008) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)), *aff'd*, 634 F. App'x 439 (5th Cir. 2015) (per curiam).

And, on a plaintiff's motion seeking summary judgment in its favor on its own claims, the Court will "draw all reasonable inferences in favor of the non-moving party" – that is, in favor of the defendant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

And, so, this "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-34-G-BN, 2020 WL 825819, at *7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. adopted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

But, on a plaintiff's motion on its own claim, "summary judgment is appropriate where the evidence would require a directed verdict." *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at *13 (N.D. Tex. Aug. 29, 2018) (cleaned up).

That is, a plaintiff may prevail on its claim on its own motion where, drawing all inferences in the defendant's favor and viewing the summary judgment in the light most favorable to the defendant, the evidence is "so overwhelmingly in favor of [the

plaintiff] that no reasonable jury could [arrive] at a verdict other than that [the plaintiff] proved" every essential element of its claim against the defendant. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 550 (N.D. Tex. 2011), *aff'd*, 709 F.3d 515 (5th Cir. 2013).

## Analysis

### I.   The Court should dismiss for lack of subject-matter jurisdiction.

The Court must begin with its subject-matter jurisdiction – its "power to say what the law is." *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023); see also *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

And, because "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

Taylor filed his lawsuit in federal court based solely on 28 U.S.C. § 1332, asserting state law negligence and product liability claims that do not invoke as a basis a federal statute. *Cf. Preston v. Mossbarger*, No. 3:15-cv-1903-N, 2015 WL 4742549, at *3 (N.D. Tex. Aug. 10, 2015) ("It makes no difference whether the state law cause of action may ultimately not be viable or that a federal law claim might be more likely to succeed – if a plaintiff files a petition in state court alleging wholly

state claims in a non-preempted field, the viability of the plaintiff's state law claims is a matter for a Texas state court to decide." (citations omitted)).

But the United States Court of Appeals for the Fifth Circuit recently explained that, in a diversity case under Section 1332,

- "[a]t the pleading stage, the party invoking the federal court's jurisdiction must allege the citizenship of each" party;

- "[a]t the summary judgment stage," the party invoking the federal court's jurisdiction "must provide evidence sufficient to support a jury finding of the citizenship of" each party; and,

- "at trial," the party invoking the federal court's jurisdiction "must prove the citizenship of each" party.

*Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order); *accord J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (published order); *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 315 n.* (5th Cir. 2019).

Here, because Taylor invoked Section 1332 as the jurisdictional basis for his claims, he bears the burden of providing evidence of the parties' citizenship.

Taylor's complaint and its attachments allege facts from which the Court may infer that (1) Taylor is a citizen of Texas and (2) Makita U.S.A. is a citizen of California because its state of incorporation and principal place of business are in California. *See* Dkt. No. 1 at 1-2; 28 U.S.C. § 1332; *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*,

485 F.3d 793, 798-99 (5th Cir. 2007); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

The complaint also alleges that Makita Corporation is "a Japanese corporation which regularly sells products in does business in the State of Texas." Dkt. No. 1 at 1.

Those allegations could carry Taylor's burden at the pleadings stage as to Taylor and Makita U.S.A. But this is summary judgment, and the record lacks sufficient evidence to support a jury finding as to the citizenship of Taylor and Makita U.S.A. And, so, Taylor must do more than properly allege the citizenships of these parties, as the Court has explained.

And Taylor does not properly allege Makita Corporation's principal place of business, let alone provide enough evidence for a jury to make such a finding. *See Hertz Corp.*, 559 U.S. at 92-93.

So, considering the recent Fifth Circuit authority cited above, absent such evidence at this stage – to satisfy the Court that there is subject-matter jurisdiction to allow it to rule on Makita's motion – the Court cannot enter summary judgment but must dismiss this lawsuit without prejudice for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also MidCap*, 929 F.3d at 315 n* ("Citizenship issues, like every factual issue necessary to support subject matter jurisdiction, must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the

manner and degree of evidence required at the successive stages of the litigation." (cleaned up)).

Still, the 14-day period to file objections to these findings, conclusions, and recommendation, as further explained below, allows Taylor an opportunity to submit evidence to establish that each plaintiff's citizenship is diverse from each defendant's citizenship and thus carry its burden to show, at this stage of the litigation, that the Court possesses subject-matter jurisdiction under 28 U.S.C. § 1332.

And, if Taylor provides such evidence, the Court should rule on the merits of the motion for summary judgment as explained below.

## II.    But, if Taylor supplies evidence of diverse citizenship, the Court should grant summary judgment on Taylor's manufacturing defect and marketing defect claims.

Makita moved for summary judgment on Taylor's manufacturing defect and marketing defect claims against them. *See* Dkt. No. 118 at 1-2. Taylor did not contest Makita's motion as to these claims. *See* Dkt. No. 126 at 5.

And so – if the Court does not dismiss for lack of subject-matter jurisdiction – the Court should grant Makita's motion for summary judgment against Taylor as to his manufacturing defect and marketing defect claims.

## III.   If Taylor supplies evidence of diverse citizenship, the Court should deny summary judgment on Taylor's design defect claim.

Makita moved for summary judgment on Taylor's design defect claim. *See* Dkt. No. 119 at 12.

To prevail on his design defect claim, Taylor must show that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer

alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322 (5th Cir. 2014) (citing *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a).

Taylor claims that he has provided enough evidence to create a genuine factual dispute that (1) GA7911 was unreasonably dangerous; (2) a safer alternative design existed because Makita manufactured and sold both separate wheel guards and "an identical tool with a wheel guard as standard equipment"; and (3) the "failure to include a guard was a producing cause" of his injuries. Dkt. No. 126 at 10-11, 20.

### 1. Makita argue that the GA7911 is not unreasonably dangerous.

Under Texas law, whether a product is unreasonably dangerous is determined using a five-factor risk-utility analysis. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). The five factors are

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; (5) the expectations of the ordinary consumer."

*Goodner*, 650 F.3d at 1040 (quoting *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999).

The "risk-utility analysis does not operate in a vacuum, but rather in the context of the product's intended use and its intended users." *Id.* at 1040 (quoting

*Timpte Indus.*, 286 S.W.3d at 312). "[T]he five factors are evaluated holistically; no single factor needs to be proven on its own, so long as all factors working together point to a finding of unreasonable dangerousness." *Id.* at 1041.

And, "[g]enerally, unreasonable dangerousness is a question of fact for the jury. It only becomes a matter of law if reasonable minds cannot differ." *Id.* (citing *Hernandez*, 2 S.W.3d at 260-61). For example, "[t]hough the obviousness of the danger is one factor in deciding whether a product is defectively designed it can, depending on the facts, become crucial to the determination of defect. Thus, a court may direct a verdict when it is convinced that, given the obviousness of the danger, it is not reasonable to require the adoption of an alternative design." *Hernandez*, 2 S.W.3d at 258 n.18 (citing Restatement (Third) of Torts: Product Liability § 2 reporters' note at 86 (cleaned up)).

Makita argues that because there were clear warnings on the box and in the instructions that Taylor did not follow, the GA7911 was not unreasonably dangerous as a matter of law. Dkt. No. 139 at 5-9. The GA7911's box displayed the following warning: "To reduce the risk of injury, always use guard if used as a grinder." Dkt. No. 119-1 at 4. And the instructions stated: "If used as a grinder…[a]lways use proper guard with grinding wheel. A guard protects operator from broken wheel fragments." Dkt. No. 119-6 at 5; Dkt. No. 126 at 16.

As Taylor points out, the Texas Supreme Court has declined to adopt a bright-line rule that "the open and obvious nature of a danger is decisive." *Timpte Indus.*, 286 S.W.3d at 313; *see* Dkt. No. 126 at 22. Instead, the presence of warnings must be

considered holistically with the other factors of the risk-utility test. *See id.* And, although there is evidence in the record that, "[h]ad [Taylor] adhered to th[e] warning, his accident would not have happened," the undersigned is not convinced that this fact, alone, causes Taylor's claim to fail as a matter of law. *Timpte Indus.*, 286 S.W.3d at 314; *see* Dkt. No. 119-5 at 17-18; *accord Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998) (refusing to adopt bright-line rule because "it is not at all unusual for a person to fail to follow basic warnings and instructions") (cleaned up).

A reasonable jury could find that the other risk-utility factors weigh against Makita. For example, based on the GA7001L's availability, a jury could find that the cost of providing a wheel guard with the GA7911 would not outweigh the utility of doing so or undermine the tool's functionality. *Cf. Timpte Indus.*, 286 S.W.3d at 314-315 (finding that the ladder was unreasonably dangerous as a matter of law because, in addition to the presence of warnings, the product's dangers were obvious to the ordinary consumer and altering the product would increase its cost and risk while decreasing its utility). And jurors could agree with Taylor's expert Daniel McDonough's opinion that "[s]upplying a wheel guard mitigates the risk of injury without impairing the tool's ability to perform grinding or sanding operations." Dkt. No. 145-2 at 8; *cf. Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995) ("It is not rational, however, to impose liability in such a way as to eliminate whole categories of useful products from the market.").

And, so, Makita has not shown that the risk-utility analysis "cut[s] so in [their]

favor that reasonable minds could not find the product unreasonably dangerous." *Scott v. Dorel Juvenile Group, Inc.*, 456 F. App'x 450, 454 (5th Cir. 2012).

And so – if the Court does not dismiss for lack of subject-matter jurisdiction – the Court should not grant summary judgment on this basis.

### 2. Makita argue that Taylor's claim fails because his own actions were the sole producing cause of his injuries.

To prevail on a design defect claim, the plaintiff must prove that the defect was a "producing cause of the personal injury." TEX. CIV. PRAC. & REM. CODE §82.005(a)(2). "Texas courts define producing cause as one that is 'a substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1044 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

"[C]ausation generally is a question of fact for the jury," unless "all the facts and inferences point so strongly against causation that no reasonable jury could find causation." *Goodner*, 650 F.3d at 1044.

Makita argue that Taylor's design defect claim fails as a matter of law because Taylor made a "choice to purchase a GA7911 *sander* (which comes without a guard) instead of a GA7001L *grinder* (packaged with a guard and goggles)" and Taylor's suggested "'safer design' product (i.e., tool sold with a wheel guard included) was already designed, manufactured, marketed, and available as Makita's GA7001L." Dkt. No. 118 at 2 (emphasis in original).

They also argue that, by "turn[ing] the sander back on after hearing an abnormal noise" and "plac[ing] his face closer to the sander," Taylor's choices became "the sole cause of this accident." Dkt. No. 139 at 3-4.

Mr. McDonough concluded that a "wheel guard would have mitigated the hazard caused by a fractured and/or fragmented grinding wheel," and that "there is nothing structurally or mechanically preventing" the use of the GA7911 as a grinder without a guard, but that "[v]ery little information was provided to users regarding how or where to purchase a wheel guard." Dkt. No. 145-2 at 7, 9. And Taylor testified that he did not use a wheel guard with the GA7911 because "[t]here wasn't one in the box." Dkt. No. 127 at 126. *Accord Hall v. Witron Integrated Logistics, Inc.*, No. 4:21-cv-477, 2023 WL 4269760 (expert testimony that the presence of safety features "would have prevented" the incident was sufficient to raise a genuine issue of material fact).

And, so, Makita have not shown a lack of evidence of producing cause that entitles them to summary judgment. *Accord Goodner*, 650 F.3d at 1045 ("Although some facts weighed against causation, there remained 'a conflict in substantial evidence' regarding whether [the alleged defect] caused [plaintiff's] injuries.").

Makita rely on the "optional safety equipment doctrine" to argue that if Taylor had purchased Makita's GA7001L grinder, "he would have no complaint of a product 'defect.'" Dkt. No. 119 at 12. They contend that Makita satisfied their duty to Taylor "about providing the arguably safer tool by offering the same tool with the guard option included (GA7001L) which Plaintiff implicitly rejected by purchasing the GA7911 sander." *Id.* at 13-14.

And, so, they argue, Taylor's "cascade of choices wiped out any causal link between the design of the sander and the injury." Dkt. No. 139 at 3.

Taylor responds that "[t]he mere availability of the safer alternative design does not insulate Makita from liability under Texas law." Dkt. No. 126 at 6.

The undersigned agrees with Taylor.

In arguing that they are not liable because they offered the GA7001L, which came with a guard, Makita rely on *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir. 1994). *Scallan* was decided under Louisiana law. But Makita urge the Court to assume that this "optional safety equipment doctrine would surely be adopted by the Texas Supreme Court if brought directly to it." Dkt. No. 119 at 16.

Makita cite to three cases within the Texas courts and the Fifth Circuit that, in Makita's view, support their prediction. *See* Dkt. No. 119 at 14, 16.

They first point to *Werner v. Blake*, 719 S.W.3d 525 (Tex. 2025), a car accident case decided in the negligence context that did not consider design defect claims. But *Werner* is not factually or legally analogous enough to this case to convince the undersigned that the Texas Supreme Court would adopt the optional safety equipment doctrine. *See id.* at 536 n.4 ("If the allegation were that a defect in the design of either vehicle contributed to the injuries, for instance, our analysis of causation would require additional considerations that are not required when assigning responsibility as between the driving errors of the two drivers involved in the accident.").

Makita also points to *McLennan v. American Eurocopter Corp.*, 245 F.3d 403 (5th Cir. 2001), and *Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180 (Tex. App. – Eastland 2000). *McLennan* relies on *Scallan* insofar as the plaintiff in *Scallan* had

"knowledge of the particular danger which led to the injuries [and] decline[d] to incorporate a safety item that would have eliminated or reduced that risk." *McLennan*, 245 F.3d at 430. The court in *McLennan* rejected plaintiff's design defect claim because plaintiff "both objectively and subjectively" knew of the risks. *Id.* And in *Banzhaf*, the court ruled against a plaintiff who "adopted a policy of refusing" the very alternative safety feature that the plaintiff advocated for. 28 S.W.3d at 187.

Makita present no evidence that Taylor knew that Makita made the GA7001L or a separately sold guard. *Cf. Scallan*, 11 F.3d at 1253 (plaintiff made an "informed decision" when he "knowingly reject[ed]" the safer alternative); *Hernandez*, 2 S.W.3d at 255 (plaintiffs "knew that some lighters were made with child-resistant mechanisms, but [they] chose not to buy them).

And Makita point to no evidence that Taylor knew the risks of using the GA7911 as a grinder without a guard. The evidence shows that Taylor did not see or read the warnings on the box, and Makita do not dispute this. *See* Dkt. No. 119-4 at 17-20.

A factual dispute exists as to whether the GA7001L had been discontinued at the time of the accident. Taylor contends, and provides evidence, that the GA7001L was discontinued in 2016. *See* Dkt. No. 126 at 13; Dkt. No. 127 at 6, 127. And Makita contend, and provide evidence, that the GA7001L was available as late as 2020. *See* Dkt. No. 139 at 4; Dkt. No. 139-1 at 15. If the GA7001L was not available for purchase at the time Taylor bought the GA7911, then he could not have rejected it.

-20-

Makita also provide evidence that a separately sold guard was available for Taylor to purchase. *See* Dkt. No. 119 at 10; Dkt. No. 119-3; Dkt. No. 139-1 at 5. And this evidence is undisputed. But, as explained above, under current Texas law, without evidence that Taylor knew that the guard was available or knew of the risks of not using it, the availability of a guard does not warrant summary judgment against Taylor.

The undersigned recognizes that several states have adopted the optional safety equipment doctrine. *See* Dkt. No. 119 at 15-16. But Texas has not, except in those cases where the plaintiff knew about the safer alternative.

Without such evidence, the Court should not find as a matter of law that the availability of the GA7001L or a separately sold wheel guard preclude Taylor's design defect claim. And so – if the Court does not dismiss for lack of subject-matter jurisdiction – the Court should not grant summary judgment on this basis.

### 3. Makita argues that Taylor's claim is barred by unforeseeable misuse.

"Foreseeability of risk of harm is a requirement for liability for a defectively designed product; a product need not be designed to reduce or avoid unforeseeable risks of harm." *Hernandez*, 2 S.W.3d at 257 (citing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b)); *accord Hernandez*, 2 S.W.3d at 259 ("[A] product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances." (citing *Caterpillar*, 911 S.W.2d at 384)).

Makita argue that summary judgment is proper because Taylor was injured while "unforeseeably misusing the tool" to "excite a generator." Dkt. No. 119 at 7, 9.

They also contend that Taylor's claim fails because he was not using the guard for its "intended purpose" – grinding. *Id.* at 11, 13.

Makita argue that when Taylor used the GA7911 to excite his generator, he "left the tool lying face up on the bed of his truck, he did not pick up the tool, and he did not hold it as instructed by the user manual." Dkt. No. 119 at 9. And this, they contend, "was not the designed, intended, or marketed use of the GA7911 sander." *Id.*

Taylor argues that "reasonable minds could find his conduct foreseeable." Dkt. No. 126 at 6. The undersigned agrees.

Makita have not shown that no reasonable jury could find that letting the GA7911 run without holding it, whether to create a power surge for a generator or for some other reason, was foreseeable. The instruction manual for the tool states: "Before using the tool on an actual workpiece, let it run for a while. Watch for vibration or wobbling that could indicate poor installation or a poorly balanced wheel." Dkt. No. 126 at 12; Dkt. No. 145-7 at 5.

Taylor has also provided evidence from which a jury could conclude that using the GA7911 as a grinder, instead of a sander, was a foreseeable and intended use of the tool. *See* Dkt. No. 126 at 12 n.14.

For example, Mr. McDonough stated in his declaration that Makita "knew that the tool could and would be used as a grinder, with a grinding wheel." Dkt. No. 145-2 at 6.

And, so, the undersigned finds that Taylor has raised a genuine dispute of material fact as to whether Taylor's use of the GA7911 was intended or foreseeable.

And so – if the Court does not dismiss for lack of subject-matter jurisdiction – the Court should not grant Makita's motion for summary judgment on Taylor's design defect claim.

## IV.    If Taylor supplies evidence of diverse citizenship, the Court should deny summary judgment on Taylor's negligence claim.

Makita ask the Court to enter summary judgment on Taylor's negligence claim because it "mirror[s] the product defect claims, [so] all claims can be considered together." Dkt. No. 119 at 11 n.27; *see also* Dkt. No. 139 at 8-9.

The undersigned agrees that the claims can be considered together. In this case, "[t]he same proof that [Taylor] has marshaled to support [his] design defect claim is also sufficient to allow [him] to survive summary judgment on [his] negligence claim." *Scott*, 456 F. App'x at 455.

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004)).

As to the first element, "[a] manufacturer has a duty to exercise reasonable care in designing and manufacturing a product." *Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 68 (Tex. App. – San Antonio). As to the second element, evidence of the availability of a safer alternative design – here, a version with a wheel guard – can prove breach. *See* Dkt. No. 126 at 27-28; *cf. Am. Tobacco Co., Inc. v. Grinnel*, 951 S.W.2d 420, 437 (Tex. 1997) ("Negligent design and manufacturing

claims are predicated on the existence of a safer alternative design for the product.").

And as to the third element, courts have held that "evidence that [the defect] was a 'producing cause' is sufficient to make out the causation requirement for a negligent design action." *Scott*, 456 F. App'x 450 (citing *Uniroyal*, 928 S.W.2d at 68); *see also Greene v. Toyota Motor Corp.*, No. 3:11-cv-207-N, 2014 WL 12575716, at *5 (N.D. Tex. June 2, 2014) (denying summary judgment on negligence claim where plaintiffs "presented evidence that the product was dangerous, and that the characteristics of the product making it dangerous were the producing cause of [p]laintiffs' injuries"). For the same reasons that Makita's challenges to producing cause fail, their challenge to proximate cause in the negligence context also fails.

And so – if the Court does not dismiss for lack of subject-matter jurisdiction – the Court should deny summary judgment on Taylor's negligence claim.

## Recommendation

The Court should dismiss this lawsuit without prejudice for lack of subject-matter jurisdiction.

But if, within the time to file objections, Plaintiff Curtis Taylor provides evidence to support his jurisdictional allegations, the Court should grant in part Defendant Makita Corporation and Defendant Makita U.S.A., Inc.'s Motion for Summary Judgment [Dkt. No. 118] and dismiss Taylor's manufacturing defect and marketing defect claims with prejudice but deny summary judgment on Taylor's design defect and negligence claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 13, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE